UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Vitamin Health, Inc.,

    Plaintiff,

v.                                        Case No. 15-10071

Hartford Casualty Insurance Co.,         Honorable Sean F. Cox

    Defendant.

_____/

**OPINION AND ORDER
GRANTING HARTFORD'S SUMMARY JUDGMENT MOTION & DENYING
VITAMIN HEALTH'S PARTIAL SUMMARY JUDGMENT MOTION**

This is an insurance coverage case. On January 1, 2015, Plaintiff/Counter-Defendant Vitamin Health, Inc. ("Vitamin Health") filed a Complaint for declaratory relief and breach of contract against Defendant/Counter-Plaintiff Hartford Casualty Insurance Co. ("Hartford"). (D.E. No. 1). In it, Vitamin Health seeks an order from this Court declaring that: Hartford is required to defend Vitamin Health in an action currently pending against Vitamin Health in U.S. District Court of the Western District of New York ("Underlying Action"); and that Hartford is required to indemnify Vitamin Health for any judgment it may face as a result of the Underlying Action's false advertisement claim against it. On February 25, 2015, Hartford filed a Counter-Claim for declaratory relief, seeking an order from this Court declaring that Hartford does not owe Vitamin Health any defense or indemnity obligations for the Underlying Action. (D.E. No. 4).

This matter is before the Court on Hartford's Motion for Summary Judgment (D.E. No.

1

15) and Vitamin Health's Cross-Motion for Partial Summary Judgment (D.E. No. 17). For the reasons set forth below, the Court shall **GRANT** Hartford's Motion and **DENY** Vitamin Health's Motion.

## BACKGROUND

### A. Factual Background

In order to provide context, the Court shall first briefly discuss the Underlying Action, which Vitamin Health alleges Hartford is obligated to defend and indemnify.

#### 1. The Underlying Action

Vitamin Health is in the business of manufacturing supplements for eye health. (Pl.'s Stmt. ¶ 6). Vitamin Health's products are intended to reduce the risk of developing age-related macular generation. (Def.'s Stmt. ¶ 1). Vitamin Health advertises its products as AREDS 2-compliant, indicating to consumers that the products contain the combination of vitamins recommended by the second Age-Related Eye Disease Study (AREDS) conducted by the National Eye Institute of the National Institutes of Health. (Def.'s Stmt. ¶ 1).

On September 16, 2013, Bausch & Lomb ("Bausch") filed a complaint against Vitamin Health in the United States District Court for the Western District of New York, alleging patent infringement. (Compl. Ex. A). Like Vitamin Health, Bausch also manufactures supplements for eye health. (Pl.'s Stmt. ¶ 6). In an amended complaint filed on April 21, 2014, Bausch alleged two counts of patent infringement and a third count of false advertising. (Def.'s Stmt. ¶ 3). Bausch's false advertising claim was based on conduct allegedly undertaken by Vitamin Health after the filing of Bausch's initial complaint. Specifically, Bausch alleged that Vitamin Health "purported to change the formulation" of its product to contain a vitamin combination that

2

allegedly does not comport with the AREDS 2 formula. (Def.'s Stmt. ¶ 3). Vitamin Health allegedly continues to falsely advertise its products as AREDS 2 compliant, despite the fact that they are not.

The following factual allegations are relevant to the false advertising claim:

37. After Bausch & Lomb filed its original Complaint, Vitamin Health purported to change the formulation of its AREDS 2 products to contain 25 mg of zinc, rather than the AREDS 2 recommended formula containing 80 mg of zinc...

38. On information and belief, despite no longer containing the AREDS 2 recommended 80 mg of zinc, Vitamin Health markets Vitamin Health's Viteyes® AREDS 2 25 mg zinc products with the term "AREDS 2" prominently displayed on their labels

39. On information and belief, Vitamin Health markets and promotes the Viteyes® AREDS 2 25 mg zinc products as based on the results of the AREDS 2 study carried out by the National Institutes of Health. The 2013 *JAMA* journal article by Dr. Chew et al., discussed above in Paragraph 35, is cited on the Viteyes® website as source material for its claims.

40. Vitamin Health's labeling, promotion and marketing of its Viteyes® AREDS 2 25 mg zinc products as the AREDS 2-recommended formulations are false and/or likely to mislead or confuse consumers

41. Vitamin Health's Viteyes® AREDS 2 25 mg zinc products are marketed as competing products to Bausch & Lomb's PreserVision® products. The distribution and sale of the Viteyes® AREDS 2 25 mg zinc products has caused and will continue to cause Bausch & Lomb to lose sales of its PreserVision® AREDS 2 products, to both existing and future Bausch & Lomb customers

42. Vitamin Health's marketing and promotional statements for its Viteyes® AREDS 2 25 mg zinc products, stating that these products are based on the recommendations made by NEI researchers following the results of the AREDS 2 study, are materially false statements that are likely to cause consumer confusion, mistake, or deception as to the quality and content of the Viteyes® AREDS 2 25 mg products. These are material misrepresentations upon which customers or potential customers have relied, and will rely. Vitamin Health's actions therefore mislead and harm customers and consumers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

(D.E. No. 1, Compl. Ex. B ¶¶ 37-42).

Vitamin Health tendered defense of the Underlying Action's amended complaint to Hartford. (Def.'s Stmt. ¶ 6). Vitamin Health sought coverage from Hartford under annual insurance policies issued to Vitamin Health over the course of nine years. (Def.'s Stmt. ¶ 7). Vitamin Health specifically asserted that the false advertising claim fell within the policies' definition of "personal and advertising injury." (Def.'s Stmt. ¶ 8). Hartford disagreed and denied defense.

### 2. Applicable Insurance Provisions

It is undisputed that the only policies at issue here are the policies in effect beginning on December 27, 2012 through December 27, 2013 and December 27, 2013 through December 27, 2014. ("Hartford Policies" or "Policies"). Subject to their stated conditions and exclusions, the Hartford Policies provided both business liability and umbrella liability insurance coverage to Vitamin Health. (Pl.'s Stmt. ¶ 2).

Business liability coverage (defense and indemnity) extends to: (1) bodily injury; (2) property damage; and (3) personal and advertising injury. At the center of the parties' dispute is the "personal and advertising injury" provision, which reads, in pertinent part, that insurance coverage applies to "'personal and advertising injury' caused by an offense arising out of your business, but only if the offense was committed in the 'coverage territory' during the policy period." Personal and advertising injury is defined, *inter alia*, as:

> Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services
> . . . .
> Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"

(Def.'s Ex. 12 at HC000111).

### Coverage Exclusions

Vitamin Health's coverage under the Policies is subject to several relevant policy exclusions. First, the policies at issue contain an endorsement, which provides that coverage does not extend to "personal and advertising injury" claims:

> (7) (a) Arising out of any violation of any intellectual property right such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity; or
>
> (b) Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation fo any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit, regardless of whether this insurance would otherwise apply

However, this exclusion does not apply if the only allegation in the claim or "suit" involving any intellectual property right is limited to:

> (1) Infringement in your "advertisement", of:
>
> (a) Copyright;
> (b) Slogan; or
> (c) Title of any literary or artistic work; or
>
> (2) copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement".

(Def.'s Ex. 11 at HC001080).

The Policies also exclude personal and advertising injury "[a]rising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'" (Def's Ex. 4 at HC000248).

**B.     Procedural Background**

On January 9, 2015, after Hartford denied defense of the Underlying Action's amended

5

complaint, Vitamin Health filed this action. (Compl.). Vitamin Health alleges the following: Count I – Declaratory Judgment; and Count II – Breach of Contract. As to Count I, Vitamin Health seeks a determination of the rights and duties of the parties and a declaration that the false advertising claims asserted in the Underlying Action's amended complaint constitute covered claims and "personal and advertising injury" within coverage of the Hartford Policies, and not subject to any exclusions. (Compl. ¶ 26). As to Count II, Vitamin Health alleges that Hartford has breached the terms of their contract by failing to pay the defense costs, charges and expenses incurred by Vitamin Health in the Underlying Action and by failing to indemnify Vitamin Health for any judgment that may result from the "personal and advertising injury" claims alleged in the Underlying Action's false advertising count. (Compl. ¶ 33). Hartford filed a counter-claim on February 25, 2015, seeking declaratory relief. (D.E. No. 4). Hartford specifically requests an order from the Court stating that it has no defense or indemnity obligations owing to Vitamin Health for the Underlying Action. *Id.*

On October 30, 2015, Hartford filed a Motion for Summary Judgment. On that same day, Vitamin Health filed a Cross-Motion for Partial Summary Judgment. The motions have been fully briefed by the parties.

In its motion, Hartford advances arguments to support the position that its duty to defend and indemnify Vitamin Health has not been triggered. (D.E. No. 15, Def.'s Br.). Hartford specifically asserts that: (1) the Underlying Action's false advertising claim is not a covered "personal and advertising injury" offense because it does not arguably state a claim for product disparagement; and (2) that even if the Underlying Action's false advertising claim constituted product disparagement, it is nevertheless barred by the following two exclusions: the intellectual

6

property exclusion, and the failure to conform exclusion. Vitamin Health's arguments in response to Hartford's motion largely mirror the arguments advanced in its cross motion for partial summary judgment, which the Court briefly summarizes below. (D.E. No. 36, Pl.'s Resp.).

In Vitamin Health's cross motion for partial summary judgment, Vitamin Health asserts that the Underlying Action's false advertising claim triggers Hartford's duty to defendant because it is arguably a claim for implicit product disparagement. (D.E. No. 17, Pl.'s Br.). Vitamin Health also argues that none of the exclusions under the Policies bar coverage. Hartford's response largely mirrors the arguments advanced in its motion. (D.E. No. 32, Def.'s Resp.).

## STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1984), *quoting* FED. R. CIV. P. 56(c).

"The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). "The moving party may meet its burden by showing that the nonmoving party lacks evidence to support an essential element of its case." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir. 1993). The plaintiff must come forth with more than a "mere scintilla of evidence" in support of his or her position in order to

survive summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). "The court must view the evidence, all facts, and any inferences that may permissibly be drawn from the facts in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

As threshold matter, Michigan law shall govern the underlying dispute because the Court's jurisdiction is premised upon diversity of citizenship. *Michigan First Credit Union v. CUMIS Ins. Soc'y, Inc*., 641 F.3d 240, 251-52 (6th Cir. 2011) (internal citations omitted).

Under Michigan law, an insurance policy is considered to be a contract—an agreement between two parties. *McGuirk Sand & Gravel, Inc. v. Meridian Mut. Ins. Co.*, 220 Mich. App. 347, 353 (Mich. App. 1996) (quoting *Auto-Owners Ins. Co. v. Churchman*, 440 Mich. 560, 566-67 (1992)). Thus, in resolving coverage disputes, "[t]he court must look at the contract as a whole and give meaning to all of its terms." *Id.* A clause in an insurance contract is valid if it is clear, unambiguous, and not against public policy. *Id.*

"Interpretation of an insurance policy ultimately requires a two-step inquiry: first, a determination of coverage according to the general insurance agreement, and second, a decision regarding whether an exclusion applies to negate coverage." *Travelers Prop. Cas. Co. of Am. v. Peaker Servs., Inc*., 306 Mich. App. 178, 184-85 (2014) (internal quotations omitted). The insured bears the burden of establishing coverage under the terms of the policy, while the insurer bears the burden of establishing an absence of coverage. *Scott v. State Farm Fire & Cas. Co.*, 86 F. Supp. 3d 727, 734 (E.D. Mich. 2015) (internal citation omitted).

8

**A.      Hartford Does Not Have A Duty To Defend The Underlying Action**

Pursuant to Michigan law, "[t]he duty of the insurer to defend the insured depends upon the allegations in the complaint of the third party in his or her action against the insured." *Citizens Ins. Co. v. Secura Ins.*, 279 Mich. App. 69, 74 (2008) (internal citations and quotations omitted). Accordingly, "an insurance company has a duty to defend its insured if the allegations of the underlying suit arguably fall within the coverage of the policy." *Salvati Ins. Grp., Inc. v. Utica Mut. Ins. Co.*, 45 F. Supp. 3d 637, 642 (E.D. Mich. 2014). "The duty to defend cannot be limited by the precise language of the pleadings." *Citizens Ins. Co.*, 279 Mich. App. at 75 (internal citations and quotations omitted). "The insurer has the duty to look behind the third party's allegations to analyze whether coverage is possible." *Id.*

### 1.      The Underlying Action's False Advertising Claim Does Not Constitute "Personal and Advertising Injury" Under The Policies

At the crux of the parties' dispute is whether the false advertising allegations in the Underlying Action could potentially fall within the policy's coverage of "personal and advertising injury." Under the Policies, coverage extends to "personal and advertising injury" offenses resulting from "[o]ral, written or electronic publication of material that ... ***disparages*** a person's or organization's goods, products, or services." (Def.'s Ex. 11 at HC001007-1008) (emphasis added). Thus, the question turns on whether the Underlying Action can arguably be read to allege that Vitamin Health disparaged Bausch & Lomb's products in its written publication. Disparagement is ordinarily defined as "to discredit or bring reproach upon by comparing with something inferior." *Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 F. App'x 596, 599 (7th Cir. 2007) (quoting Webster's Third New International Dictionary (unabridged) 653 (1981)).

9

The Court finds that there can be no disparagement, where, as here, a policy holder is alleged to have misrepresented the content of its *own* product, and not its competitor's. Here, the false advertising claim in the Underlying Action arose out of Vitamin Health's alleged "knowing and willful false and misleading labeling of *its* products." (Compl. Ex. B ¶ 33) (emphasis added). The underlying complaint focuses on Vitamin Health's alleged misrepresentation that its Viteyes® products are AREDS 2-compliant. Because Viteyes® products are marketed as competing products to Bausch & Lomb's products, their distribution and sale is alleged to have caused Bausch and Lomb to lose sales. The underlying complaint further states that Vitamin Health's AREDS 2 misrepresentations "are likely to cause consumer confusion, mistake, or deception *as to the quality and content of the Viteyes® AREDS 2*" products. *Id.* ¶ 42 (emphasis added).

Vitamin Health admits that the Underlying Action does not allege "that Vitamin Health made statements that directly referred to Bausch & Lomb's" products. (Pl.'s Resp. at 5). Instead, Vitamin health argues that the false advertising claim alleges that its advertisements implicitly disparaged Bausch & Lomb's products. To support this contention, Vitamin Health points to Bausch & Lomb's website advertisements, which allegedly represent that Bausch & Lomb products are the "first and only" AREDS 2 compliant products on the market. Vitamin Health appears to be arguing that Bausch & Lomb's website ads, coupled with the false advertising allegations in its amended complaint, constitute disparagement by implication. According to Vitamin Health, this type of false comparison disparages Bausch & Lomb's products. Vitamin Health's reasoning as to this point is flawed for a number of reasons.

First, in making the above argument, Vitamin Health mistakenly relies on *E.piphany, Inc. v. St. Paul Fire & Marine Ins. Co.*, 590 F. Supp. 2d 1244 (N.D. Cal. 2008). There, the court determined that the allegations in the underlying complaint established disparagement by "clear implication." *Id.* at 1253. The court reasoned that the policy holder's "statement that it was ... 'the only component-based, fully-J2EE complete CRM suite available' necessarily suggest[ed] that competitor products did not have such capabilities." *Id.* The court concluded that the "gravamen of the Underlying Complaint ... [was] that [the policy holder] made false claims about the superiority of its own products, which clearly and necessarily implied the inferiority of Sigma's competing products, resulting in damages to Sigma." *Id.* Unlike the underlying complaint in *E.piphany*, the underlying complaint at issue here does not allege that Vitamin Health made any false claims of superiority. In fact, the reverse is true: Vitamin Health has argued that it is Bausch and Lomb that allegedly advertises its products as superior to its competitors.

Second, Vitamin Health has not persuasively distinguished the cases relied upon by Hartford.[1] In *Welch Foods, Inc. v. Nat'l Union Fire Ins. Co.*, 2010 WL 3928704 (D. Mass. Oct. 1 2010), the court denied a claim for coverage under facts analogous to facts presented here. Like Vitamin Health, the policy holder in *Welch Foods* was covered for "'personal and advertising injury," which was defined in part as arising out of "[o]ral or *written publication, in any manner, of material that ... disparages a person's or organization's goods, products or services ...*'" *Id.* at *3 (internal citations omitted) (emphasis in original). The underlying

---

[1] The Court shall only discuss Hartford's reliance on *Welch Foods* since it is most analogous to the facts presently before the Court.

11

complaint in *Welch Foods* alleged that Welch Foods Inc. (policy holder) engaged in false and misleading advertising. Specifically, the underlying plaintiff alleged that the policy holder's use of pomegranates on its label misleads consumers into believing that its white grape pomegranate juice contains actual pomegranate juice. *Id.* at *1. The court reasoned that the policy holder's advertisements "did not disparage POM or its products by making false claims about them; rather [the policy holder was] alleged to have misrepresented the content of its *own* product. *Id.* (emphasis in original). The court further distinguished the case before it from cases "in which one competitor is suing another for false claims about the superiority of its own products. *Id.* (contrasting *E.piphany*, 590 F. Supp. 2d at 1253-54). Vitamin Health attempts to distinguish *Welch Foods* by arguing that the facts present in *E.piphany* are "precisely what has occurred" here. However, for reasons already stated, Vitamin Health is mistaken as to this point. Accordingly, *Welch Foods* appears to be strikingly on point, and Vitamin Health has not persuaded the Court otherwise.

Vitamin Health also mistakenly relies on *Jar Laboratories, LLC v. Great American E&S Ins*. Co., 945 F. Supp. 2d 937 (N.D. Ill 2013), for the proposition that misleading comparisons between a policy holder's products and its competitor's products could trigger an insurer's duty to defend against claims for advertising injury based on disparagement. (Pl.'s Br. at 14-15, 17-18). *Jar Laboratories* is factually distinct from the present case. There, the underlying complaint alleged that the policy holder's "statements communicated 'false/misleading messages' **about** [the underlying plaintiff's product]." *Jar Laboratories*, 945 F. Supp. 2d at 943 (emphasis added). Here, no such allegations exist.

In all, Vitamin Health has not established that the Underlying Action's false advertising

12

claim triggers Hartford's duty to defend.[2] It simply cannot be shown, or inferred, that the false advertising claim is arguably a claim for product disparagement. This is especially true in circumstances where, as here, a policy holder is **not** alleged to have made or implied false claims about its competitor's products or the superiority of its own products. Just as in *Welch Foods*, [t]he gravamen of the underlying claim here is false advertising, not product disparagement." *Welch Foods, Inc.*, 2010 WL 3928704 at *3. Accordingly, the Court finds that the claims in the Underlying Action are not covered by the Policies.

### 2. The Underlying Action's False Advertising Claim Is Also Subject To Exclusions Under The Hartford Policies

Even if the Court were to determine that the Underlying Action's false advertising claim fell within the insuring agreement, which it does not, it is nevertheless excluded under the following two policy exclusions: (1) the intellectual property exclusion; and/or (2) the failure to conform exclusion.

Typically, exclusions in an insurance policy should be construed strictly in favor of the insured. *McGuirk Sand v. Meridian Mut. Ins. Co.*, 220 Mich. App. 347, 353 (1996). However, "[c]lear and specific exclusions" must be given effect so as to avoid holding an insurance company liable for a risk it did not assume. *Id*.

---

[2] Vitamin Health also summarily asserts that the false advertising claim constitutes disparagement because it alleges "that Vitamin Health has 'mislead and harm[ed] consumers and customers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).'" (Pl.'s Br. at 19). Rather than provide any meaningful analysis, Vitamin Health merely recites Section 43(a) and states that the "allegations fall squarely within the definition of 'personal and advertising injury' in the Hartford Policies." *Id.* This argument is without merit. While a Lanham Act claim that alleges misrepresentations regarding *another's* goods or products may implicate disparagement, the same cannot be said about a Lanham Act claim that alleges misrepresentations about one's *own* goods or products.

### a. Intellectual Property Exclusion

The policy in effect at the time of the Underlying Action's amended complaint includes an endorsement, which modified the personal and advertising injury exclusion in the following way:

> p. Personal and Advertising Injury:
>
> > (7) (a) Arising out of any actual or alleged infringement or violation of any intellectual property right, such as... patent; or
> >
> > (b) **Any injury or damage alleged in any claim or "suit" that also alleges an infringement or violation of any intellectual property right**, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or "suit", regardless of whether this insurance would otherwise apply.

(Def.'s Ex. 11, at HC001080) (emphasis added).

The Court finds that subsection (7)(b) of the above exclusion clearly and unambiguously bars coverage in situations where, as here, a claim of false advertising is alleged in the same complaint alleging patent infringement. Notably, Vitamin Health does not dispute that the Underlying Action's false advertising claim is alleged in a suit that *also* alleges patent infringement claims. Instead, Vitamin Health's argument largely pertains to subsection (7)(a) of the above exclusion. Vitamin Health cites various cases with similar "arising out of" language and states that such language cannot be read to exclude allegations of false advertising and disparagement. The problem with Vitamin Health's argument is that it wholly disregards subsection (7)(b).

Moreover, Vitamin Health does not acknowledge, or attempt to distinguish, the numerous cases cited by Hartford where courts have interpreted subsection (7)(b)'s same language in a manner consistent with Hartford's position. (Def.'s Br. at 17) (citing cases in which courts have

14

found no duty to defend where an intellectual property exclusion excluded coverage for advertising injury claims alleged in a suit that *also* alleged intellectual property claims).

Vitamin Health concludes by making the following cursory assertion:

> Moreover, if Hartford wished to use this exclusion in the manner it suggests, it should have stated that "any <u>personal or advertising</u> injury or damage alleged in any claim or 'suit' that also alleges an infringement or violation of any intellectual property right, whether such allegation of infringement or violation is made by you or by any other party involved in the claim or 'suit', regardless of whether this insurance would otherwise apply." Hartford cannot use the general undefined term of 'injury' to supersede the defined phrase and separate coverage grant for "personal and advertising injury."

(Pl.'s Resp. at 16).

This is the only argument advanced by Vitamin Health that is arguably aimed at subsection (7)(b). Vitamin Health's position here is flawed for a number of reasons. As an initial matter, Vitamin Health does not support this argument with any analysis or relevant law. Further, Vitamin Health's argument takes the word "injury" out of context. When interpreting an insurance policy, courts must look at the contract as a whole, giving meaning to all of its terms. *Auto-Owners*, 440 Mich. 560 at 566-67. The applicable exclusion here appears in an endorsement titled, "Amendment of Exclusions and Definition - Personal and Advertising Injury." (Def.'s Ex. 11, at HC001080). The endorsement states that it modifies the "Personal and Advertising Injury" exclusion in the business liability coverage form. Directly preceding subsections p(7)(a) and (b) is section p. Section p is titled personal and advertising injury. Taken in context, subsection (7)(b)'s reference to "any injury or damage" clearly includes "personal and advertising injury." And finally, in making this argument, Vitamin Health disregards the way this exclusion has been interpreted by other courts.

    **b.**  **Failure to Conform Exclusion**

The Hartford Policies also clearly and unambiguously bar coverage for "personal and advertising injury" arising out the failure of goods, products, or services to conform with any statement of quality or performance made in one's 'advertisement. (Def.'s Ex. 11, at HC000993).

Here, the false advertising claim alleges that Vitamin Health falsely represents its products as AREDS 2 compliant. This representation is a statement of quality as to Vitamin Health's *own* products. Accordingly, the false advertising claim arises out of Vitamin Health's failure to conform with the representation that its products are AREDS 2 compliant. This squarely falls within the policy's failure to conform exclusion.

**B.      Hartford Does Not Have A Duty to Indemnify Vitamin Health**

An insurer's duty to defend is broader than the duty to indemnify under Michigan law; therefore, if no duty to defend arises pursuant to the policy's terms, the more limited duty of indemnification cannot be imposed by that policy. *Scott,* 86 F. Supp. 3d at 733.

Here, Vitamin Health has not established Hartford's duty to defend. Accordingly, there is no duty to indemnify.

## CONCLUSION

For the reasons set forth above, the Court shall **GRANT** Hartford's Motion for Summary Judgment (D.E. No. 15) and **DENY** Vitamin Health's Motion for Partial Summary Judgment

(D.E. No. 17).

**IT IS SO ORDERED**.

                                                    S/Sean F. Cox
                                                    Sean F. Cox
                                                    United States District Judge

Dated: May 9, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 9, 2016, by electronic and/or ordinary mail.

                                                    S/Jennifer McCoy
                                                    Case Manager